UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BRANCH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, and PAUL WARD, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | Case No.: 15-cv-2336 AJB KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS and GIVING LEAVE TO AMEND AS TO ONE CLAIM ONLY**<br><br>**(Doc. No. 37)** |

Defendants County of San Diego and Paul Ward move to partially dismiss Plaintiff Robert Branch's First Amended Complaint ("FAC"). (Doc. No. 33.) For the reasons discussed herein, the Court **GRANTS** defendants' dismissal motion, but gives Branch **LEAVE TO AMEND** as to the failure to train cause of action only. Branch's *Monell* liability – ratification claim is **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

This suit arises from circumstances surrounding Defendant Paul Ward's arrest of Plaintiff Robert Branch on May 5, 2015. Branch drove his car on Interstate 8 and alleges a brief road rage incident that caused him to drive recklessly. After exiting Interstate 8, Branch parked his car on a side street near College Avenue in San Diego. (Doc. No. 33 ¶ 10.) Detective Ward, an off-duty detective in the San Diego Sheriff's

Department ("SDSD"), who Branch alleges was involved in Branch's reckless driving incident on Interstate 8, parked behind Branch and approached him. (*Id.* ¶¶ 12–13.) Ward showed Branch his badge and asked for Branch's license and registration. (*Id.* ¶ 13.) Ward then asked Branch to step out of his vehicle and told Branch he was being detained. (*Id.* ¶ 17.) In the process of the detention, Ward placed his forearm around Branch's throat and trachea in a chokehold. (*Id.* ¶ 17.) Other law enforcement officers arrived and arrested Branch. (*Id.* ¶ 20.) Branch was charged with reckless driving, resisting an officer by force, and attempted tear gassing of a peace officer. (*Id.* ¶ 26.) Following a criminal trial, a jury found Branch not guilty. (*Id.*)

Branch maintains that SDSD had a department policy and procedure wherein SDSD failed to train its officers, detectives, and other employees on the use of excessive force, despite SDSD's knowledge that its officers and detectives used excessive force in the field. (*Id.* ¶ 21.) Branch also maintains that SDSD knew of Ward's improper behavior and use of excessive force in the field, yet SDSD showed deliberate indifference for public safety by failing to train, retrain, discipline, or curtail Ward's behavior. (*Id.* ¶ 22.) Branch submits that this shows that SDSD ratified Ward's excessive use of force in the field. (*Id.*) Branch further alleges that another SDSD detective reported a prior complaint to SDSD about Ward's behavior, stating that Ward had committed a battery against him. (*Id.* ¶ 23.) The detective reported that Ward exhibited erratic behavior and was a "loose cannon" who "was going to hurt somebody." (*Id.* ¶ 23.)

Branch's charges include (1) failure to properly train and (2) *Monell* Liability – Ratification. (*Id.* ¶ 25.) Defendants moved to dismiss these causes of action for failure to state a claim upon which relief can be granted. (Doc. No. 37.)

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack

of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal. Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citations omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III.   DISCUSSION

Defendants move to dismiss the fourth and fifth *Monell* causes of action for failure to train and ratification, both against the County only. (Doc. No. 37-1 at 1–2.) There are three ways to show that a municipality's policy or custom establishes *Monell* liability: (1) by showing a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002) (internal citations and quotation marks omitted).

#### A.   *Monell* Liability Premised Upon Failure to Train

One way to hold a county liable under *Monell* is by showing a "longstanding practice

or custom which constitutes the standard operating procedure of the local government entity." *Id.* at 984 (internal quotation marks omitted). To prove an inadequate training claim, a plaintiff must show that, "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. To succeed, a Plaintiff must show: "(1) an inadequate training program, (2) deliberate indifference on the part of the County in adequately training its law enforcement officers, and (3) whether the inadequate training "actually caused" a deprivation of [Plaintiff's] constitutional rights." *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

Branch asserts both the existence of a policy and custom and deliberate indifference in his complaint as proof of failure to train. The law governing this topic is like a Russian nesting doll—for each element to be proven, there are multiple avenues down which a Plaintiff may choose to go to prove their claim, and each avenue consists of multi-factor tests. The court addresses Branch's arguments as they appear to be pleaded, while acknowledging that there are other ways he could attempt to prove his claim.

### 1. Inadequate Training Program

In order to hold a municipality liable, a plaintiff must prove the existence of a policy or program which was the result of a conscious choice by the municipality. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997) (explaining that "[l]ocating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.") Alternatively, a plaintiff may prove the existence of a widespread custom, though not officially approved policy, which operates with the force of law. *Id.* at 404. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Harris*, 489 U.S. at 389.

Here, Branch alleges SDSD has a policy or custom: (1) exhibiting deliberate indifference, (Doc. No. 33 ¶ 58); (2) failing to supervise and train its officers, (*Id.* ¶ 60); (3) endorsing the use of excessive force, (*Id.* ¶ 59); all failing to "discourage further

4

constitutional violations." (*Id.* ¶ 60.) Branch alleges this led to an atmosphere where officers "believed that their actions would not be properly monitored," (*Id.* ¶ 61), and officers routinely "engage[d] in rampant, outlaw behavior," (*Id.* ¶ 21.) Branch's allegations, however, are either conclusory or simply regurgitate the elements he is seeking to prove. Further, Branch claims there is both a failure to train in the general sense, as well as a failure to train specifically on the use of the carotid restraint.

Defendants argue Branch failed to factually support his claims that SDSD "did not have an adequate training program to train its officers, detectives, [and] employees." (*Id.* at i93 (quoting FAC ¶ 57).) Defendants advance that the allegations in Branch's FAC do not contain "factual content regarding the existence of a systemically inadequate training program that was deliberately indifferent to the alleged risks involved in use of force or neck restrains." (*Id.* at 4.)

The Court agrees. Branch fails to allege facts supporting a policy or pattern of conduct of a failure to train generally or on the chokehold Ward used. Even accepting Branch's allegations regarding Ward as true, the Court cannot extrapolate an alleged failure to train one employee, involving a single incident, into a systemic problem resulting from a policy or custom of inadequate supervision and training. Simply put, Branch's allegations fail to show there is a "longstanding practice" involving failure to train officers resulting in an atmosphere of disregard for constitutional rights. Regarding the training on the use of the carotid restraint specifically, Branch fails to allege any facts supporting a "deliberate" or "conscious" choice by SDSD to train employees on the use of a carotid restraint. Branch alleges that SDSD has a "department policy and procedure wherein SDSD failed to train its officers, detectives, and other employees on the use of excessive force despite SDSD's knowledge that its officers and detectives used excessive force in the field. SDSD failed to train, discipline, or modify its policies which allowed its officers and detective to engage in rampant, outlaw behavior." (Doc. No. 33 ¶ 21.) However, other than two incidents regarding Ward—only one of which involved the chokehold—the complaint does not allege any other incident involving any other officers. Thus, Branch fails to allege

the existence of a policy chosen by the municipality regarding use of a carotid restraint or a general failure to train.

In his opposition, however, Branch claims SDSD provided Ward with instruction on the chokehold in its training manual, thus establishing SDSD's policy on the restraint, but he fails to allege these facts in his FAC. (Doc. No. 39 at 8.) Branch supports this by citing to specific paragraphs in his FAC, but the cited paragraphs do not contain factual allegations referencing SDSD's training manual. (Doc. No. 33 ¶¶ 66, 72, 73.) This evidence cannot be used to support Branch's argument because it was not pleaded in Branch's FAC. If this was alleged in his complaint, it could show the existence of an SDSD training policy on the carotid restraint, establishing a policy by SDSD on carotid restraints, which Branch may then attempt to prove inadequate. Therefore, Branch has not pleaded facts supporting the existence of a SDSD policy regarding use of the chokehold restraint.

### *2. Showing Deliberate Indifference (Fault)*

A plaintiff must prove deliberate indifference by the municipality to show fault, a standard higher than mere negligence. *See Brown*, 520 U.S. at 406–07 (holding that a Plaintiff must show that, "the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." (citations omitted)). Plaintiffs must first establish the "[e]xistence of a 'program'" in order to make proving "fault and causation at least possible in an inadequate training case." *Id.* at 407. A municipality's "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (quoting *Harris*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)). Next, a Plaintiff must show that a municipality's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action." *Id.* at 407. A plaintiff normally must provide evidence of "[a] pattern of similar constitutional violations by untrained employees . . . to demonstrate deliberate indifference for purposes

6

of failure to train." *Connick*, 563 U.S. at 62; *see also Bd. of Cty. Comm'rs*, 520 U.S. at 407–08 ("the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training . . . is the "moving force" behind the plaintiff's injury.")

Alternatively, the Court in *Harris* hypothesized a scenario where, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S. at 390. However, it is not enough to allege that, "an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391. When addressing the city's liability, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* at 390–91.

Branch alleges that SDSD "had the policy and/or custom to inadequately supervise and train its officers . . . and thereby failed to adequately discourage further constitutional violations." (Doc. No. 33 ¶ 60.) Branch continues, claiming that SDSD "did not require appropriate in-service training or retraining of its officers, detectives, and other employees who were known to engage in the use of unnecessary and excessive force." (*Id.*) However, Branch fails to allege any facts regarding "the adequacy of the training program in relation to the tasks performed." *Harris*, 489 U.S. at 390–91. Rather, Branch alleges a vague conclusion that any training provided was inadequate and inappropriate. Branch alleges that the training manual included directions on use of the chokehold, but fails to include those allegations in his FAC. (Doc. No. 39 at 8.) Therefore, Branch has not shown that the program itself was defective.

Moreover, Branch also fails to satisfy either a "pattern of tortious conduct" or the "obviousness" test under *Harris*. As to the former, Branch alleges another behavioral infraction by Ward, however, there is no indication that the incident involved the same kind of chokehold. (Doc. No. 33 ¶ 23.) Nor does Branch allege any other instances of

7

SDSD employees using the chokehold. (Doc. No. 33.) Regarding the latter, Branch fails to plead facts supporting such an "obviously inadequate training program" in light of the duties assigned to Ward and other officers under *Harris*. Instead, Branch appears to simply claim that Ward was inadequately trained, and the program was generally inappropriate, rather than providing facts about the deficiencies in SDSD's carotid restraint training program. (Doc. No. 33 ¶¶ 21–22, 59–61.)

As Branch has failed to meet the first two elements, the Court finds no need to evaluate causation. Curing the above defects may assist Branch in a finding of causation.

Branch has not pleaded facts showing that SDSD's training program is inadequate regarding use of a carotid restraint, a pattern of tortious employee conduct, or an obvious need for more training in light of the duties assigned to Ward. Therefore, Branch fails to allege facts supporting deliberate indifference by the County.

**B. *Monell* Liability Premised Upon Ratification**

Defendants request that the Court dismiss Branch's cause of action for failure to state a factually plausible municipal federal civil rights claim against the County based on alleged ratification. (Doc. No. 37-1.) A plaintiff may hold municipal defendants liable in two ways:

> (1) by showing that the decision-making official was, as a matter of state law, a final policymaking authority 'whose edicts or acts may fairly be said to represent official policy' in the area of decision, or (2) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Ulrich*, 308 F.3d at 984–85 (citations omitted). Branch fails in proving either of these elements, however, the bigger issue is whether Ward was acting under state authority at the time he arrested Branch because if so, he would be immune from *Monell* liability.

Who constitutes the final policymaker on a specific issue is governed by California law. "A court must discern which entity a government official represents 'in a particular area, or on a particular issue' by examining how the official's functions are defined by state law. While this law may give varying responses, we look to "'the weight of the evidence'

8

to reach a conclusion." *Pitts v. Cty. of Kern*, 17 Cal. 4th 340, 356 (1998) (citations omitted).

California legal precedent holds that Sheriffs act under State authority when carrying out law enforcement operations. *See, e.g.*, *Streit v. Cty. of Los Angeles*, 236 F.3d 552, 564 (9th Cir. 2001) (holding that "[s]earching for wants and holds that may or may not have been issued for persons whom the state has no legal right to detain is an administrative function of jail operations for which the LASD answers to the County," but "[a]cting upon a warrant is a law enforcement function with which the LASD is tasked under California state law."); *Venegas v. Cty. of Los Angeles*, 32 Cal. 4th 820, 839 (2004) ("California sheriffs act as state officers while performing state law enforcement duties such as investigating possible criminal activity."); *Cty. of Los Angeles v. Superior Court*, 68 Cal. App. 4th 1166, 1174–75 (1998) ("[W]e likewise conclude that in establishing policies for the release of persons from a county jail, a sheriff acts as a state official, not a policymaker for the county . . . State law imposes on county sheriffs the duty to enforce criminal law.") Based on this persuasive precedence, the Court finds that affecting an arrest is undoubtedly a law enforcement duty, and one which California law entrusts to Sheriffs. Cal. Penal Code § 830.1, 834–36.

Here, when Ward arrested Branch, he was acting as a State law enforcement officer carrying out a State law enforcement function. The final policymaker regarding use of force when affecting an arrest is the Sheriff, as head of the law enforcement department entrusted by State law to affect arrests. A brief examination of the San Diego County Sheriff's Department's Policy & Procedure Manual section 1.2 indicates that "[o]nly the Sheriff may approve Departmental policies and procedures."[1]

Thus, Branch's *Monell* claim cannot succeed against Ward, as state officers are immune from *Monell* liability. *Venegas,* 32 Cal. 4th at 829 ("states and state officers sued

---

[1] S.D. Cnty Sheriff's Dept. Pol'y and Proc. Manual, *§ 1.2 Review & Approval - Dept. Policies & Procedure* (2018), *available at* http://www.sdsheriff.net/documents/pp/pp-20160321.pdf.

9

in their official capacity are not considered persons under section 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity.")

## IV. CONCLUSION

The Court **GRANTS** defendants' motion. (Doc. No. 37.) The Court **DISMISSES** Branch's fourth cause of action for failure to train as Branch failed to allege any facts regarding the adequacy, or inadequacy, of SDSD's training program regarding use of carotid restraints, and failed to allege facts showing a pattern of behavior by SDSD employees. The Court **DISMISSES** this cause of action **WITH LEAVE TO AMEND AS TO THIS CLAIM ONLY**. The second amended complaint, leaving in all surviving claims and only amending the *Monell* claim for failure to train, is due by **May 11, 2018**.

As to Branch's fifth cause of action for *Monell* liability – ratification, the Court **DISMISSES** this claim **WITH PREJUDICE** because the Sheriff was acting as a State official when he arrested Branch and is therefore immune from *Monell* liability.

**IT IS SO ORDERED.**

Dated: April 24, 2018

Hon. Anthony J. Battaglia
United States District Judge